IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILE**

MAR 2 0 2011

By: _____ District Court
_____ Deputy Clerk

UNITED STATES OF AMERICA,        }
                                 }
        Plaintiff,               }
                                 }
    v.                           }        No.  11-20099-02-KHV/JPO
                                 }
CORTNEY COPP,                    }
                                 }
        Defendant.               }

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney, Sheri McCracken, and Cortney Copp, the defendant, personally and by and through defendant's counsel, Paul Morrison, hereby enter into the following plea agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Indictment charging a violation of Title 21, United States Code, § 841 (a)(1), that is, knowingly and intentionally conspired to distribute and possess with intent to distribute a mixture and substance containing Oxycodone, a controlled substance. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the sentence which may be imposed as to Count 1 of the indictment to which the defendant has agreed to plead guilty is not more than 20 years of imprisonment, a $1,000,000 fine, not less than 3 years of supervised release, and a $100 mandatory special assessment. If the defendant has a prior felony drug conviction, the sentence which may be imposed as to Count 1 is not more than 30 years imprisonment, not more than a

$2,000,000 fine, not less than 6 years of supervised release, and a mandatory $100 special

assessment fee. The United States agrees that at the time of sentencing it will move for dismissal

of the remaining counts of the indictment.

    **2.**    **Factual Basis for the Guilty Plea.**   The parties agree the facts constituting the

offense to which the defendant is pleading guilty are as follows:

    Commencing on or about June 1, 2009, and continuing to or about September 30, 2011,
in the District of Kansas and elsewhere the defendant, Cortney Copp (hereafter Copp), conspired
and agreed with Mounir Elmarrakchi a.k.a. "Mo" (hereafter Elmarrakchi), and others to distribute
and possess with the intent to distribute a mixture and substance containing oxycodone.

    Specifically, on June 16, 2009, a State of Missouri search warrant was executed at
ELMARRAKCHI's residence, 105 West 90th Terrace, Kansas City, Missouri. Numerous drug
exhibits were seized including several oxycodone tablets of various milligram strength. The total
amount of oxycodone seized from the residence is 8,430 mg. Among other items seized was a
ledger that contained extensive accounting of ELMARRAKCHI's oxycodone transactions.
Further review of the ledger was conducted by TFO Ron Frazier and is attached to this summary.
ELMARRAKCHI claimed a desire to cooperate with law enforcement and charges were
deferred. In the end, ELMARRAKCHI failed to cooperate with law enforcement.

    On March 16, 2010, Overland Park, Kansas Police Department CI I10-4008 provided
information to police regarding ELMARRAKCHI and Courtney COPP's oxycodone and
marijuana distribution. The CI stated that he/she has purchased oxycodone tablets from
ELMARRAKCHI and/or Courtney COPP approximately 300 to 400 times in last two years.
ELMARRAKCHI and COPP were known to sell all of the various milligram strength tablets of
oxycodone.

    On April 6, 2010, Overland Park, Kansas Police Department CI I10-4008 telephoned
ELMARRAKCHI and was instructed to call ELMARRAKCHI from a payphone. The CI
attempted to call ELMARRAKCHI from a payphone and ELMARRAKCHI did not answer. The
CI then called COPP and was told that ELMARRAKCHI would be calling the CI to arrange the
transaction. The CI met with ELMARRAKCHI and made a controlled purchase of ten (10)
OxyContin 40mg tablets from ELMARRAKCHI near the intersection of West 97th Street and
Nall Avenue in Overland Park, Kansas.

    On August 2, 2010, Overland Park, Kansas Police Department CI I10-4022 and CI
I10-4023 provided information to police regarding ELMARRAKCHI and Courtney COPP's
oxycodone distribution activities.

    On August 3, 2010, Overland Park, Kansas Police Department CI-I10-4022 arranged an
oxycodone transaction with Courtney COPP. During the planning, COPP mentioned that
ELMARRAKCHI had the pills and that she would have to meet with him prior to the meeting
with the CI. The CI purchased twenty OxyContin 40 mg tablets for $460.00 from Courtney
COPP in the parking lot of Dick's Sporting Goods, 11801 Nall Avenue, Leawood, Kansas.

According to the CI, COPP mentioned ELMARRAKCHI had a steady supply of OxyContin due to their suppliers.

On August 29, 2010, the Overland Park, Kansas Police Department responded to a firearms complaint at 12010 Ash, Overland Park, Kansas. A female tenant who lived directly below ELMARRAKCHI and COPP's apartment, awoke to find a bullet hole in her ceiling and a bullet on the floor next to her bed. Officers contacted ELMARRAKCHI and COPP and received verbal consent to search the apartment. During the consent search, officers observed heroin, marijuana, and OxyContin tablets. Another ledger of ELMARRAKCHI's was seized that contained similar notations of the first ledger seized on June 16, 2009. ELMARRAKCHI and COPP provided post Miranda video and audio taped statements that contained admissions of oxycodone distribution and abuse. According to Johnson County lab reports, fifty three 80mg OxyContin tablets, thirty two 40mg OxyContin tablets, and nineteen 30 mg oxycodone tablets were seized.

On April 29, 2011, the Overland Park, Kansas Police Department responded to a disturbance call at a Shell gas station in Overland Park, Kansas. Officers eventually encountered ELMARRAKCHI and COPP near the gas station. During separate interviews, ELMARRAKCHI and COPP explained that they had recently ended their relationship. ELMARRAKCHI was found in possession of one 80 mg OxyContin tablet and one generic Percocet tablet and arrested.

TFO Ron Frazier analyzed the drug ledger seized from 105 W. 90th Terrace, Kansas City, Missouri and the drug ledger seized from 12010 Ash, Overland Park, Kansas. TFO Frazier created a spreadsheet that combined information from both ledgers. According to the defendant's drug ledgers, ELMARRAKCHI and COPP have sold 269,640 mg oxycodone and have been supplied 369,840 mg oxycodone.

The drug exhibits mentioned herein were taken to the Johnson County Crime laboratory, the Kansas City Missouri Crime laboratory and the Drug Enforcement Administration laboratory where they tested positive for the substances stated in the amounts indicated.

**3.** **Application of the Sentencing Guidelines.** The parties request that the United

States Sentencing Guidelines (Guidelines) be applied by the Court to calculate the applicable

sentence in this case and that a sentence consistent with the Guidelines be imposed by the Court.

The defendant further waives any right to have facts that determine the offense level under the

Guidelines alleged in an indictment and found by a jury beyond a reasonable doubt; agrees that

facts that determine the offense level will be found by the Court at sentencing by a

preponderance of the evidence and agrees that the Court may consider any reliable evidence,

including hearsay; and the defendant agrees to waive all constitutional challenges to the validity

3

of the Guidelines. The parties further agree to request a sentence within the guideline range determined to be appropriate by the U.S. Probation Department. In other words, the United States will not request a sentence in excess of the high end of the guideline range and the defendant will not request a sentence below the low end of the guideline range. The parties understand this agreement binds the parties only and does not bind the Court.

4.     **Relevant Conduct.**     The parties have agreed to the application of the Guidelines and therefore both the United States and the defendant understand that the conduct charged in any dismissed counts of the indictment is to be considered as well as all other uncharged related criminal activity as relevant conduct for purposes of calculating the offense level for Count 1, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5.     **Government's Agreements.**     In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

   a.     To not file any additional charges against the defendant arising out of the facts forming the basis for the present indictment;

   b.     To recommend a sentence at the low end of the applicable guideline range;

   c.     To recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if the defendant's offense level is 16 or greater, the United States will move at the time of sentencing for the defendant to receive an additional one (1) level reduction for acceptance of responsibility because the defendant timely notified the government of her intention to enter a plea of guilty; and

   d.     To not request an upward departure from the applicable sentencing guideline range if the defendant agrees not to request a downward departure.

4

The government's obligation concerning its agreements listed in ¶ 5 are contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to her involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the United States reserves the right to request a hearing to determine if the defendant has breached this agreement.

In the event the Court finds the defendant has breached this plea agreement or has otherwise failed to adhere to its terms, the United States shall not be bound by this paragraph and may pursue any additional charges arising from the criminal activity under investigation as well as any perjury, false statement, or obstruction of justice charges which may have occurred. The defendant understands and agrees that in the event the defendant violates this plea agreement, all statements made by the defendant subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against the defendant in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements made by the defendant subsequent to this plea agreement.

**6.** **Defendant's Agreements.** The defendant agrees to cooperate fully and truthfully with the United States as follows:

5

a.     Defendant agrees to provide truthful, complete, and accurate information and testimony in the trial of this matter, before any grand jury proceeding, or in any related hearing;

b.     Defendant agrees to provide all information concerning the defendant's knowledge of, and participation in, the offenses charged in the indictment and all related conduct;

c.     Defendant agrees that if the United States determines the defendant has not provided full and truthful cooperation, or has committed any local, state, or federal crime between the date of this plea agreement and her sentencing, or has otherwise violated any other provision of this plea agreement, [or has violated the terms and conditions of her release while on bond as required by the Court,] the plea agreement may be voided and the defendant shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, perjury, obstruction of justice, and any substantive offenses arising from this investigation.  Such prosecution may be based upon any information provided by the defendant during the course of the defendant's cooperation, or upon leads derived therefrom, and this information may be used as evidence against the defendant.  In addition, the defendant's previously entered plea of guilty will remain in effect and cannot be withdrawn;

d.     Defendant agrees to fully and completely assist the United States in the identification and recovery of forfeitable assets, either domestic or foreign, which have been acquired directly or indirectly through the unlawful activities of the defendant, co-defendants, and/or co-conspirators and further agrees to not contest any forfeiture proceedings.

**7.     Substantial Assistance.**     The defendant acknowledges that substantial

assistance has not yet been provided by the defendant within the meaning of U.S.S.G. § 5K1.1 and Title 18, United States Code § 3553(e).  The defendant also acknowledges and understands that the determination as to whether the defendant has provided substantial assistance and whether a motion pursuant to U.S.S.G. § 5K1.1 will be filed are left entirely and exclusively within the discretion of the United States.  If a determination is made by the United States the

6

defendant has provided substantial assistance, the United States shall request that the Court consider reducing the sentence the defendant would otherwise receive under the applicable statutes and/or sentencing guidelines pursuant to Title 18, U.S.C. § 3553(e), Title 28, U.S.C. § 994(n), and U.S.S.G. § 5K1.1.

**8.      Sentence to be Determined by the Court.**   The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence the defendant will receive.

**9.      Information Provided by Defendant.**    The United States agrees not to use new information the defendant provides about the defendant's own criminal conduct except as specifically authorized by U.S.S.G. § 1B1.8. As such, this information may be revealed to the Court but may not be used against the defendant in determining the defendant's applicable guideline range or departing above her guideline range. Defendant understands and agrees, however, that under U.S.S.G. § 1B1.8, there shall be no such restrictions on the use of the information: (1) previously known to the United States; (2) revealed to the United States by, or discoverable through, an independent source; (3) in a prosecution for perjury or giving a false statement; (4) in the event there is a breach of this agreement; or (5) in determining whether and to what extent a downward departure as a result of a government motion pursuant to Title 18, U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 is warranted.

**10.      Identification of Assets & Agreement Concerning Monetary Penalties:**

The defendant agrees to cooperate fully with the United States Attorneys Office and specifically:

7

A) Provide a financial statement on a form approved by the USAO that discloses all assets in which defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party, as well as any transfer of assets that has taken place within 3 years preceding the entry of this plea agreement.

B) Submit to an examination, which may be taken under oath and may include a polygraph examination.

C) Acknowledges that any waivers, consents, or releases signed by the defendant for purposes of the Presentence Investigation Report extends to the USAO.

D) Will not encumber, transfer, or dispose of any monies, property or assets under her custody or control, without written approval from the USAO.

E) The defendant understands and agrees that, pursuant to Title 18, United States Code, Section 3613, whatever monetary penalties are imposed by the court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

F) The defendant authorizes the U.S. District Court to release the funds posted as security for her appearance bond in this case to be applied to satisfy the financial obligations of the defendant, pursuant to the judgment of the Court.

8

G) The defendant waives any requirement for demand of payment on any fine, restitution, or assessment the District Court announces on the record the day of sentencing.

11.    **Withdrawal of Plea Not Permitted.**    The defendant understands that if the court accepts this plea agreement but imposes a sentence with which the defendant does not agree, the defendant will not be permitted to withdraw this plea of guilty.

12.    **Payment of Special Assessment.**    The defendant understands that a mandatory special assessment of $100 per count of conviction will be entered against the defendant at the time of sentencing. The defendant agrees to deliver to the clerk of the court payment in the appropriate amount no later than the day of plea. If the defendant fails to make full payment of the special assessment the United States will no longer be bound by the provisions contained in Section 5(b) of this agreement. The burden of establishing an inability to pay the required special assessment lies with the defendant.

13.    **Waiver of Appeal and Collateral Attack**.    The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change her sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v.

9

Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. §

3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro 60(b). In other words, the

defendant waives the right to appeal the sentence imposed in this case except to the extent, if any,

the court departs upwards from the applicable sentencing guideline range determined by the

court. However, if the United States exercises its right to appeal the sentence imposed as

authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may

appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a). Notwithstanding the

forgoing waivers, the parties understand that the defendant in no way waives any subsequent

claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

**14.** **Waiver of FOIA Request.** The defendant waives all rights, whether asserted

directly or by a representative, to request or receive from any department or agency of the United

States any records pertaining to the investigation or prosecution of this case including, without

limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C.

§ 552, or the Privacy Act of 1974, Title 5, U.S.C. § 552a.

**15.** **Waiver of Claim for Attorney's Fees.** The defendant waives all claims under

the Hyde Amendment, Title 18, U.S.C. § 3006A, for attorneys fees and other litigation expenses

arising out of the investigation or prosecution of this matter.

**16.** **Full Disclosure by United States.** The defendant understands the United States

will provide to the court and the United States Probation Office all information it deems relevant

to determining the appropriate sentence in this case. This may include information concerning

the background, character, and conduct of the defendant including the entirety of the defendant's

criminal activities. The defendant understands these disclosures are not limited to the count to

10

which the defendant has pled guilty. The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

17.     **Deportation Consequences**. Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. (Indeed, because defendant is pleading guilty to_____, removal is presumptively mandatory.) Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

18.     **Parties to the Agreement.**     The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

19.     **No Other Agreements.**     The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel. Further, the

11

defendant acknowledges that she has read the plea agreement, understands it and agrees it is true

and accurate and not the result of any threats, duress or coercion. The defendant further

understands that this plea agreement supersedes any and all other agreements or negotiations

between the parties, and that this agreement embodies each and every term of the agreement

between the parties. The defendant acknowledges that the defendant is entering into this

agreement and is pleading guilty because the defendant is guilty and is doing so freely and

12

voluntarily.

Date: 2-1-12

SHERI MCCRACKEN, # 17097
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730 (telephone)
(913) 551-6541 (facsimile)
E-mail: sheri.mccracken@usdoj.gov

Date: 2-1-12

SCOTT RASK, # 15643
AUSA/Criminal Coordinator
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730 (telephone)
(913) 551-6541 (facsimile)
E-mail: scott.rask@usdoj.gov

Date: 3-20-12

CORTNEY COPP
Defendant

31972

Date: 3-20-12

PAUL J. MORRISON, #
Morrison Law Firm, LLC
130 N. Cherry, Suite #103
Olathe, KS 66061
(913) 780-6666 (telephone)
(913) 780-6565 (facsimile)
Email: paul@paulmorrisonlaw.com

13

14